[Civ. No. 3406.    First Appellate District, Division One.—November 26, 1920.]

## RANSOME–CRUMMEY COMPANY, Appellant, v. WILLIAM A. COULTER, Respondent.

[1] Street Assessment—Validity of Lien—Determination on Former Appeal—Law of Case.—Where on the second trial of an action for the foreclosure of a street assessment lien the findings against the defense of exemption of defendant's property by reason of previous acceptance of the street by the city are almost, if not quite, identical with those under review on the first appeal, the determination on the first appeal as to the validity of the lien and the liability of defendant's property therefor is the law of the case.

[2] Id. — Acceptance of Less Than Contract Price — Unlawful Agreement Between Contractor and Owner—Validity of Lien —Successor in Interest of Contracting Owner.—A provision of a city charter making an agreement between a street contractor and an owner liable to be assessed to accept less than the contract price a fraud on all persons assessed other than the owners who were parties to such agreement cannot be availed of by a successor in interest of a party to such an agreement to defeat

the assessment lien, since such successor stands in the shoes of his predecessor.

[3] ID.—RESOLUTION OF INTENTION—PREPARATION AND PRESENTATION BY STREET CONTRACTOR — VALIDITY OF ASSESSMENT LIEN. — The fact that a resolution of intention to order street work adopted by the mayor and common council was prepared by the street contractor and presented by the contractor to the city for passage did not affect the validity of the assessment lien.

APPEAL from a judgment of the Superior Court of Santa Clara County. J. R. Welch, Judge. Reversed.

The facts are stated in the opinion of the court.

R. M. F. Soto for Appellant.

William A. Coulter, *in pro. per.,* for Respondent.

WASTE, P. J.—The plaintiff brought this action to foreclose a street assessment lien. The lower court held that the assessment was a nullity, and that the plaintiff had no lien, or right of action. Judgment was entered for the defendant and the plaintiff appeals after the denial of its motion for a new trial.

The proceedings were taken under the Vrooman Act [Stats. 1885, p. 147], incorporated in, and thereby made a part of, a former charter of the city of San Jose. They relate to regrading and paving the roadway of the crossing of Santa Clara and Twelfth Streets in that city. Two trials have been had. Judgment was entered in favor of the defendant on the first trial. On appeal the judgment was reversed and the cause remanded for further proceedings consistent with the court's decisions. (*Ransome-Crummey Co.* v. *Coulter,* 177 Cal. 574, [171 Pac. 308]; *Ransome-Crummey Co.* v. *Bennett,* 177 Cal. 560, [171 Pac. 304].) On the going down of the *remittitur,* the plaintiff filed an amendment to its complaint, and the defendant Coulter filed an amended answer consisting of denials and separate defenses. The lower court found the allegation of the complaint to be true, except the general averment of adverse claims on the part of certain defendants, which was found to be untrue. The regularity of the proceedings is not challenged, and the plaintiff is entitled to a reversal of the

judgment, unless its right to a lien is destroyed by the effect of the court's finding on the separate defenses set up by the defendant.

The respondent claims that his property is exempt from the assessment by reason of a previous acceptance of the roadway by the city. He alleged, and the court found, that by an ordinance passed long before the present proceedings were initiated, the city of San Jose had accepted the roadway of Santa Clara Street, with an agreement on its part that thereafter it should be kept open and in repair by the city, the expense to be paid from the city's general fund. This ordinance, it appears, was declared valid by the superior court of Santa Clara County, in an action between other parties, in July, 1893. The same contention was directly passed upon and the point completely disposed of on the former appeal. The freeholders' charter of the city of San Jose, in force at the time of these proceedings, adopts, and makes part of itself, when not inconsistent with its express provisions, the general street law, commonly known as the Vrooman Act (Stats. 1885, p. 147), as the said law was at the time of the adoption of the charter, and as such law should be thereafter amended. It was pointed out on the former appeal that section 20 of the Vrooman Act was the only legal basis for such an acceptance as claimed by respondent. As that section had been repealed on April 5, 1911, and there was not, when the proceeding for the street work here involved was subsequently commenced, any such provision, either in the Vrooman Act or the freeholders' charter of the city of San Jose, the court held that the facts embraced in the former findings as to the acceptance of the street by the city constituted no defense to plaintiff's action. (*Ransome-Crummey Co.* v. *Coulter*, 177 Cal. 574, [171 Pac. 308]; *Ransome-Crummey Co.* v. *Bennett*, 177 Cal. 560, 566–568, [171 Pac. 304].)

[1] The findings on this point, made on the retrial of the case, are almost, if not quite, identical with those under review on the first appeal, and we regard the question as settled by the former decision, with the possible exception that it is now made to more clearly appear that the ordinance of acceptance has never been amended or repealed and is (at the time of the trial) in full force and effect. Respondent urges that this last noted fact constitutes an

important, and material, addition to the findings which he claims was not considered by the supreme court on the former appeal. His argument is, in brief (although the findings do not show the facts), that the freeholders' charter of the city of San Jose, adopted in 1897, by apt provision, continued the ordinance of acceptance in force, and it not having been repealed, constituted a contractual relation between the city and the property owners along Santa Clara Street which could not be interfered with by the repeal of section 20 of the Vrooman Act. We think respondent is incorrect in his estimate of the weight of the decision on the former appeal and what was there considered. The supreme court said: "We shall assume that the facts were such as to authorize the enactment of this ordinance under this section, and that it was a valid enactment precluding further repair and improvement of the roadway at the expense of the property fronting thereon for so long as it remained effective. . . . Appellant contends that the repeal [of section 20 of the Vrooman Act] struck dead the ordinance of acceptance." The court, after giving fully its reasons, then held "that the legislative repeal of section 20 of the Vrooman Act operated to repeal the power conferred upon the city of San Jose in the matter under consideration" and that the effect of that repeal was to revoke the privilege of exemption theretofore enjoyed by the property owners along Santa Clara Street. (*Ransome-Crummey Co. v. Bennett, supra.*)

[2] A provision of the charter of the city of San Jose requires the contractor for street work, before any assessment can be made, to file an affidavit to the effect that he has not entered into any private agreement with any person liable to be assessed for such street work to accept less than the price named in the contract, nor to make a rebate or reduction to him from such price. Any such agreement, the charter provides, shall be deemed a fraud upon all persons liable to be assessed, other than property owners who were parties to the contract, and operates to void as to such persons so defrauded any assessments made for the work done under the contract. Such an affidavit was filed in this proceeding. Respondent contends that its statements do not conform to the facts, and that by reason of an agreement entered into by the plaintiff, and respondent's predecessor

in ownership of the lot, and to which compact respondent was not a party, he, respondent, was defrauded, and that the property is not now liable for the assessment.

In this connection the trial court found that a private agreement was entered into June 21, 1909, by the plaintiff, with the owners of lots fronting on Santa Clara Street (to which contract the defendant Coulter was not a party, but to which his predecessor in interest, Walter, was), for the paving and improvement of that street, including the crossing of Santa Clara and Twelfth Streets. The agreed prices for doing this work were sixteen cents per square foot for asphalt paving, including grading, thirty-five dollars each for catch-basins, and sixty-five cents and seventy-five cents for specified pipe drains. So much was considered on the former appeal, and it was held that the lower court's finding made it clear that such private contract had no reference to any contemplated street improvements by the city, and did not constitute a defense to plaintiff's claim. (*Ransome-Crummey Co.* v. *Coulter, supra.*) On this appeal, however, additional facts are presented, the effect of which, respondent contends, is to bring the lien now sought to be foreclosed within the ban of the charter provisions.

The court now finds that work under this private agreement, of June 21, 1909, was commenced by the plaintiff, and carried on until the roadway of Santa Clara Street was improved, as far as the intersection of that thoroughfare with Twelfth Street. Plaintiff then presented a bill to Walter, then in possession of the lot now owned by defendant, which is adjacent to the crossing named, for the amount due under the private agreement for the frontage work on Santa Clara Street. Walter demurred to the bill, claiming that under the agreement the intersecting crossing of Santa Clara Street and Twelfth Street should have been improved by plaintiff before the work could be considered completed. By way of settlement Walter paid to plaintiff the sum of $232.24, and took in return the following agreement:

"San Jose, Calif., July 30, 1910.

"Received of Dr. C. H. Walter $232.24, said sum being in full payment for paving and constructing concrete gutters on Santa Clara St. on frontage of 63.98 ft., beginning at the southeast corner of 12th and Santa Clara Sts. and run-

ning easterly said distance of 63.98 ft., said sum being in full payment for 1311.98 sq. ft. of asphalt paving including grading at 16¢ per sq. ft. and 160 sq. ft. of concrete gutter at 14¢ per sq. ft., and said sum being paid pursuant to the agreement made and entered into on the 21st day of June, 1909, between ourselves and certain property owners on E. Santa Clara St. In consideration of having received said sum of $232.24 on this date, we hereby agree that should you be required to pay said sum or any other sum to any other person or corporation for said work, to protect you against, and to assume, any assessment that should be levied for said work against your property.

"Nothing herein contained shall in anywise release us from our liability under said contract of June 21, 1909, to do such work as may be required to be done on the crossing and intersection of 12th and Santa Clara Sts. and for which said work you agree to pay for asphalt paving at the rate of 16¢ per sq. ft. according to the portion for which you are liable according to the Street law.

"RANSOME-CRUMMEY COMPANY,
"By HENRY W. WHIPPLE."

Some fifteen months after the giving of this receipt by plaintiff to Walter, the public proceedings for the improvement of the Twelfth Street crossing on Santa Clara Street were initiated by a resolution of intention adopted by the city council, October 9, 1911. The plaintiff entered into the public contract for doing the work, under which the present lien arose, February 28, 1912, at a price of twenty-five cents per square foot for constructing asphalt pavement, including concrete foundation and regrading, seventy-five dollars each for catch-basins, and one dollar per foot for pipe drains. These prices are in excess of those named in the private contract entered into with all the property owners for the improvement, and the price for the crossing work named in the receipt of July 30, 1910.

While the agreement entered into by plaintiff and Walter, in July, 1910, appears to be but little more than a receipt for money paid for work already done under the private contract with all the property owners along Santa Clara Street, and a reaffirmance of that agreement by the plaintiff so far as it related to the further work demanded by Walter, the trial court found that it "was made and entered into by

plaintiff with full knowledge on its part of an intention to
apply for, and improve said Twelfth Street crossing under
a public contract with the city." On these facts the re-
spondent argues that he was a party defrauded by the
transaction, and that the assessment against the lot he now
owns is void. We seriously doubt if the additional matter
now presented for consideration is sufficient to remove the
private contract of June, 1909, and the settlement there-
under arrived at by plaintiff and Walter, from the holding
on the former appeal. The trial court was of the opinion
that it did, and the respondent so argues. Whether it did
or did not seems to us immaterial, for the respondent is not
"one of the persons liable to be assessed for such work,"
who is protected from fraud by the charter inhibition
against private contracts between the street contractor and
some of the other property owners. He stands in the shoes
of his predecessor, Walter, who was a party to the alleged
unlawful agreement, and who is accorded no protection by
the charter provision. Respondent asserts that as the suc-
cessor of Walter, who made the private agreement with
plaintiff, he is by virtue of his assignment of Walter's con-
tract to purchase the lot and his assignment of Walter's
contract with the plaintiff entitled to all defenses Walter
might have in the premises against plaintiff's claim. But
Walter was directly excepted from the beneficent provision
·of, and was given no right of defense by, the charter pro-
vision. Neither is the respondent.

Respondent asserted as another defense to plaintiff's
claim, and the court found that he saw and read the agree-
ment between plaintiff and the lot owners on Santa Clara
Street and the subsequent agreement with Dr. Walter, and
knew that a permit had been issued by the city to plaintiff
to do the street work referred to in the former contract, and
that being deceived by the guaranty of plaintiff, he was de-
ceived and induced into purchasing the lot "to his damage
and loss from the expenses imposed in litigation, loss of time,
etc." What his losses were does not appear, but that is im-
material here, for the facts embraced in the finding do not
avail as a defense in this action.

[3] The fact that the resolution of intention to order
the street work, adopted by the mayor and city council,
was prepared by the plaintiff and presented by it to the

city for passage, requires but little notice.  There is nothing in the record to indicate that such action was the result of corruption or fraud.  Of like import is the contention of respondent that the plaintiff was guilty of constructive fraud, in that it entered into a private agreement to do the work upon certain terms, and then induced the city to award it a contract to do the work at greatly increased prices.  He insists, therefore, that plaintiff is estopped from enforcing its alleged lien upon the lot.  This contention has no support in the findings.

On the record brought here, and under the law of the case so well established on the former appeal (*Ransome-Crummey Co. v. Coulter, supra; Ransome-Crummey Co. v. Bennett, supra*), the lower court should have found for the plaintiff.

The judgment is reversed and the cause is remanded to the lower court with the direction that it enter judgment upon the findings in accordance with the prayer of the complaint.

Richards, J., and Beasly, J., *pro tem.*, concurred.